NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Justin DiCarlo, on Behalf of Himself and All Others Similarly Situated,<br><br>   Plaintiff,<br><br>  v.<br><br>St. Mary's Hospital, Bon Secours New Jersey Health System, Inc., and Bon Secours Health System, Inc.,<br><br>   Defendants. | CIVIL ACTION NO. 05-1665 (DRD-SDW)<br><br>**OPINION** |

LAW OFFICES OF JAN MEYER
Jan Meyer, Esq.
1029 Teaneck Road
Teaneck, New Jersey 07666

BERNSTEIN LIEBHARDT & LIFSHITZ, LLP
Keith M. Fleischman, Esq.
Robert J. Berg, Esq.
Robert J. Aranoff, Esq.
Brian S. Cohen, Esq.
10 East 40th Street, 22nd Floor
New York, NY 10016
 *Attorneys for Plaintiff and the Class*

GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE, P.C.
Michael R. Griffinger, Esq.
Anthony M. Gruppuso, Esq.
One Riverfront Plaza
Newark, New Jersey 07102

McDERMOTT WILL & EMERY, LLP
David S. Rosenbloom, Esq.
Rachel M. Trummel, Esq.
227 Monroe Street
Chicago, IL 60606-5096

1

*Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

## I.  PROCEDURAL HISTORY

Plaintiff, Justin DiCarlo, brought this class action against Defendants, St. Mary's Hospital ("St. Mary's"), Bon Secours New Jersey Health System, Inc. ("BSNJ"), and Bon Secours Health System, Inc. ("BSHSI").  Plaintiff alleges that on August 13, 2004, suffering from an increased heart rate, he received an EKG and underwent blood tests at St. Mary's.  He had no health insurance and did not qualify for Medicare or Medicaid.  At the time of admission he agreed to pay "all charges" associated with the care St. Mary's provided to him.  St. Mary's charged him $3,483.04 in accordance with its uniform Charge Master charges.  These charges were far greater than those that would have been paid by a privately insured patient, or one covered by Medicare or Medicaid, and, according to Plaintiff, were unreasonable.

Plaintiff's complaint alleges breach of contract, breach of the duty of good faith and fair dealing, violation of the New Jersey Consumer Fraud Act ("NJCFA"), unjust enrichment, and breach of fiduciary duty on the part of Defendants.  Because Plaintiff seeks to prosecute this claim as a class action, and because the proposed class would include residents of multiple states, this Court has jurisdiction over these state law claims by the terms of the Class Action Fairness Act of 2005, which grants district courts original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2).  Defendants answered and moved for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

## II. FACTS AS ALLEGED IN THE COMPLAINT

Plaintiff, Justin DiCarlo, is a resident of Huntington Station, New York. (Compl. ¶ 15.) Defendant St. Mary's Hospital ("St. Mary's") is an acute care medical/surgical hospital located in Hoboken, New Jersey. (Compl. ¶ 18.) Defendant Bon Secours Health System, Inc. ("BSHSI") is a not-for-profit Catholic health system consisting of numerous facilities in nine states, including St. Mary's Hospital. (Compl. ¶¶ 2, 19, Answer ¶¶ 1, 2.) Defendant Bon Secours New Jersey Health System, Inc. ("BSNJ") operates St. Mary's Hospital, and has as its sole corporate member BSHSI. (Compl. ¶ 17, Answer ¶ 1.)

Plaintiff went to St. Mary's Hospital on August 13, 2004, suffering from an increased heart rate. (Compl. ¶ 26.) He did not have health insurance, and did not qualify for Medicare or Medicaid (Compl. ¶ 27). As a condition of treatment, Plaintiff was required to sign a form document which guaranteed payment of unspecified charges. (Compl. ¶ 28.) The document read as follows:

> I hereby consent to the administration of such treatment, medication, or anesthesia and the performance of such surgery as deemed necessary or advisable on myself or my minor dependent. I also guarantee payment of all charges and collection expenses for services rendered, and grant permission for release of information to my insurance company. I authorize payment directly to the hospital of the hospital benefits otherwise payable to me. (Dfts' Ex. C (1).)

St. Mary's charged Plaintiff $3, 483.04 for the services provided, excluding separately billed physician's fees. (Compl. ¶ 26.) These are so-called "Charge Master" prices, charged in accordance with a hospital index of prices for services, supplies, and medications provided by St. Mary's. (Compl. ¶ 3, Answer ¶ 3.) This is a greater amount than the hospital would receive

3

from Medicare, Medicaid, or certain private insurance.  (Compl. ¶ 3, Answer ¶ 3.)  Plaintiff was unaware of this difference in pricing at the time of his treatment.  (Compl. ¶ 30.)   Plaintiff further alleges that these charges "far exceed actual costs," and that the charges were "unfair, unreasonable, discriminatory and highly inflated . . . ."  (Compl. ¶¶ 31, 68).

In addition to accepting discounted payments from government programs and private insurers, St. Mary's provides free or discounted care to patients eligible for the New Jersey Charity Care Program, N.J.S.A. § 26:2-H-18.51 et seq. and implementing regulations, N.J.A.C. § 10:52-11.1 et seq., which employs a sliding scale based on the Federal Poverty Guidelines promulgated by the United States Department of Health and Human Services to determine who qualifies for charity care.  (Answer ¶ 3.)  Uninsured patients not qualifying for charity care, or patients whose insurers did not have a contractual agreement with St. Mary's for discounted payments, are billed the full Charge Master rates.  (Answer ¶ 3.)

Numerous governmental bodies and agencies have looked into, and expressed concern about, the problem of disparate pricing of health care for uninsured patients.  The Oversight and Investigations Subcommittee of the United States House of Representatives Energy and Commerce Committee held hearings on the subject, in June of 2004, at which executives from major health insurers criticized the practice, and two large hospital companies have chosen to discontinue it.  (Compl. ¶¶ 34, 36.)  The Attorneys General of Florida and Minnesota have also criticized the practice, the latter having issued a lengthy report on the issue in January of 2005.  (Compl. ¶¶ 48, 49, 50.)  The lack of health insurance is a national problem affecting vast numbers of people, and it often imposes severe economic hardship.  (Compl. ¶¶ 37, 38, 41, 42, 43, 44, 45, 46, 47.)

Plaintiff seeks to prosecute this suit as a class action, the class consisting of:

> All persons who received any form of healthcare treatment from Bon Secours, including all member hospitals of Bon Secours Health System, Inc., who were uninsured at the time of treatment, and who were charged, billed, and not given an adjustment in their bill such that a greater amount than the Medicare reimbursement rate for the same service was billed or collected by Bon Secours. (Compl. ¶ 51.)

Plaintiff asks to be permitted to explore the reasonableness of the hospital's charges during discovery, and intends to use as measures of reasonableness "the hospital's costs, functions, and services, what the services are ordinarily worth in the community – i.e., what people ordinarily pay for the services, the hospital's internal factors and similar charges of other hospitals in the community, as well as the hospital's budgetary needs." (Pl.'s Sur-Reply Br. at 3.)

### III. DISCUSSION

#### Standard of Review for Dismissal under Fed. R. Civ. P. 12(c)

A motion for judgment on the pleadings will be granted, pursuant to Fed. R. Civ. P. 12(c), if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law. Allah v. Brown, 351 F.Supp. 2d 278, 280 (D.N.J. 2004). The court will accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the non-moving party, but will not accept unsupported conclusory statements. Id.

#### Count 1: Breach of Contract

At the outset the Court must reject Defendants' argument that Plaintiff's breach of contract claim fails because, not having paid the hospital charges, Plaintiff has suffered no damages. To have standing to assert a breach of contract claim, plaintiffs need not "wait until lawsuits against them were filed or collection agents began harassing them or their credit files were red-flagged." Pruitt v. Allstate Ins. Co., 672 N.E.2d 353, 356 (Ill. App. Ct. 1996). The expense is incurred, whether paid or not, at the time the patient enters a hospital with the

5

understanding that he or she is liable for all or part of the charges for the services to be rendered. Dillione v. Deborah Hosp., 113 N.J. Super. 548, 555-56 (App. Div. 1971).

It is Plaintiff's contention with respect to the contract claim that the contract between himself and St. Mary's contained an open price term and that, therefore, the law implies an agreement to pay only a reasonable price. In light of prices that uninsured patients and medicare, medicaid, and charity patients pay, Plaintiff argues that the charges he was required to pay were unreasonable on their face and an inquiry into the extent of their unreasonableness is required.

Plaintiff cites Restatement (Second) of Contracts, § 204, which provides that "[w]hen the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the courts." See also NBCP Urban Renewal P'ship v. City of Newark, 17 N.J. Tax 59, 73 (Tax 1997), aff'd, 17 N.J. Tax 505 (App. Div. 1998) (citing Tessmar v. Grosner, 23 N.J. 193, 201 (1957)). Plaintiff cited out-of-state cases in which the courts held that an agreement that a hospital patient signed that obligated the patient to pay the hospital's "charges" or "regular charges" failed to fix a price and a reasonable price would be implied, e.g., Doe v. HCA Health Servs. of Tenn., 46 S.W.3d 191 (Tenn. 2001); Payne v. Humana Hosp. Orange Park, 661 So.2d 1239 (Fla. 1995).

While Plaintiff's contentions have facial persuasiveness, they fail to take into account the peculiar circumstances of hospitals, such as St. Mary's, and the bearing these circumstances have upon the interpretation of contracts between a patient and the hospital. St. Mary's has a uniform set of charges (casually known as the "Chargemaster") that it applies to all patients, without regard to whether the patient is insured, uninsured, or a government program beneficiary. As Plaintiff in his complaint and in his briefs recites, St. Mary's accepts a variety of discounted

payments in different situations. It negotiates differing discounts with some managed care payors and insurance companies. It accepts discounted payments if the patient is covered by a government program that legislatively imposes discounts. It has provided discounts to uninsured patients based on demonstrated financial need pursuant to its Charity Care policy and the requirements of the New Jersey Charity Care Program, N.J.A.C. § 10.52-11.8, providing free care to those demonstrating income up to 200% of the Federal Poverty Level and providing services at a reduced rate for patients with incomes greater than 200% but not less than 300% of the Federal Poverty Level. All of these charges and computations were based on St. Mary's uniform set of charges.

The form signed by Plaintiff read, in relevant part, "I also guarantee payment of all charges and collection costs for services rendered . . . ." (Answer ¶ 68, Ex. C(1)). The Court finds that in the context of this case, the price term was not in fact open, and that "all charges" unambiguously can only refer to St. Mary's uniform charges set forth in its Chargemaster. If the price term is deemed unambiguous, a court may not use extrinsic evidence to determine the parties' intent or make a different contract for the parties than the one already made. Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191-92 (App. Div. 2002). A party cannot introduce extrinsic evidence "for the purpose of modifying or enlarging or curtailing its terms," and may only employ such evidence "to aid in determining the meaning of what has been said." Driscoll Constr. Co. v. State Dep't. of Transportation, 371 N.J. Super. 304 (App. Div. 2004) (quoting Casriel v. King, 2 N.J. 45, 51 (1949)).

The price term "all charges" is certainly less precise than price term of the ordinary contract for goods or services in that it does not specify an exact amount to be paid. It is, however, the only practical way in which the obligations of the patient to pay can be set forth,

given the fact that nobody yet knows just what condition the patient has, and what treatments will be necessary to remedy what ails him or her.[1]  Besides handing the patient an inches-high stack of papers detailing the hospital's charges for each and every conceivable service, which he or she could not possibly read and understand before agreeing to treatment, the form contract employed by St. Mary's is the only way to communicate to a patient the nature of his or her financial obligations to the hospital.  Furthermore, "it is incongruous to assert that [a hospital] breached the contract by fully performing its obligation to provide medical treatment to the plaintiff[] and then sending [him] [an] invoice[] for charges not covered by insurance."  Burton v. Beaumont Hosp., 373 F.Supp.2d 707, 719 (E.D. Mich. 2005).

This case, and other similar cases being brought throughout the country, arise out of the anomalies which exist in the American system of providing health care.  A court could not possibly determine what a "reasonable charge" for hospital services would be without wading into the entire structure of providing hospital care and the means of dealing with hospital solvency.  These are subjects with which state and federal executives, legislatures, and regulatory agencies are wrestling and which are governed by numerous legislative acts and regulatory bodies.  For a court to presume to address these problems would be rushing in where angels fear to tread.  What Plaintiff is asking the Court to do here is, put simply, to solve the problems of the American health care system, problems that the political branches of both the federal and state governments and the efforts of the private sector have, thus far, been unable to resolve.  Like other similar suits filed in other federal courts, this action seeks judicial intervention in a political

---

[1]This variation among hospital patients raises the question whether class action status would be appropriate for this case.  Each member of the class would have had a different condition, requiring different remedies, and a different calculation of a "reasonable" fee.

morass.[2]

Hospitals in New Jersey are already highly regulated entities. New Jersey's Charity Care Program offers free or discounted care to patients with demonstrated financial need. N.J.S.A. 26:2-H-18.51 et seq. and implementing regulations, N.J.A.C. 10:52-11.1 et seq. Hospitals also require the permission of the state government, subject to certain exceptions, to expand or offer new services. N.J.S.A. 26:2H-7. The entirety of N.J.S.A. 26:2H, in fact, relates to the regulation of health care facilities, and N.J.S.A. 26:2J regulates health insurance in the state. Additionally, the federal government regulates the operation of hospitals in a number of respects. See, e.g., 42 U.S.C. § 1395dd (requiring that hospitals participating in Medicare provide screening and emergency treatment to anyone, whether a Medicare beneficiary or not).

The Court is ill-equipped to examine "the hospital's costs, functions, and services, what the services are ordinarily worth in the community – i.e., what people ordinarily pay for the services, the hospital's internal factors and similar charges of other hospitals in the community, as well as the hospital's budgetary needs," (Pl.'s Sur-Reply Br. at 3), in order to make a policy determination that the political branches have been unwilling or unable to make themselves.

Even though it has been reversed in pertinent part, the district court opinion in Kolari v. New York-Presbyterian Hosp., 328 F.Supp.2d 562 (S.D.N.Y. 2005), rev'd in part, ___ F.3d ___ (2nd Cir. 2006) is instructive. In the lead complaint in that action, plaintiff Kolari sued, among others, New York-Presbyterian Hospital ("the Hospital"). Kolari, an uninsured person, was admitted to the Hospital and treated for eleven nights for burns. He received a bill for

---

[2]For a list of other claims dismissed by federal courts around the country, see Kolari v. New York–Presbyterian Hosp., 382 F.Supp.2d 562, 567 n.2 (S.D.N.Y. 2005), rev'd in part, Kolari v. New York-Presbyterian Hosp., ___ F.3d ___, 2006 WL 1901019 (2nd Cir. July 11, 2006).

approximately $58,000, for which he subsequently received telephone calls and letters demanding payment and threatening litigation.

Kolari asserted a number of federal law claims. He sought relief under 26 U.S.C. § 501(c)(3), asserting third party beneficiary status under the express or implied contract between the Hospital, as a charitable entity, and the United States. Independent of his third-party beneficiary status, Kolari sought direct relief under § 501(c)(3), which provides that organizations founded and operated exclusively for charitable purposes shall be exempt from taxation. Further, Kolari asserted a claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, charging that the hospital engaged in "aggressive, abusive, and humiliating collection practices." Kolari charged that the Hospital violated the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395(dd), et seq., and that it violated his rights under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution. Kolari's final federal claim was that the Hospital, by accepting federal tax exemptions and charging as it did, breached a charitable trust to provide mutually affordable medical care to its uninsured patients.

In addition to his federal claims, Kolari asserted state law claims that parallel the claims asserted in the instant case. The court decided those claims, exercising supplemental jurisdiction under 28 U.S.C. § 1367 (a). The first of the state law claims was a contract claim in which Kolari alleged that the Hospital breached the contract he was required to sign prior to his hospital admission in which the Hospital promised to charge him a fair and reasonable fee for the services provided.[3] Rejecting this claim, the district court stated:

---

[3]The Amended Complaint alleged that prior to a patient's admission into a defendant hospital the hospital required the patient to sign a form contract promising to pay, in full,

>When asked at oral argument for an example of a rate charged to Plaintiffs by the NYP Defendants that is *objectively* inflated, Plaintiffs' counsel suggested that the NYP Defendants would be charging an objectively inflated rate were they to charge $1 million for a single aspirin.  Counsel's ability to conceive of an objectively inflated rate does not amount to an allegation of such a rate in this case. In fact, counsel never argued that the rates charged to the named plaintiffs were objectively unreasonable, much less alleged it.  Instead, and despite my many attempts to extract a single, independent basis for this claim, Plaintiffs' counsel repeatedly insisted that a comparison of the rates charged to Plaintiffs with the rates charged to insured and Medicare- or Medicaid-eligible patients demonstrated the price inflation.  Relying on such a comparison, however, would directly contravene established New York law.  Because the Amended Complaint alleges no other facts which, if proven, would render the Hospital's charges unreasonable and because it was apparent at oral argument that counsel is unable to plead any additional facts, Plaintiffs' breach of contract claim is dismissed.

Kolari, 382 F.Supp.2d at 576 (citations to record omitted).

Kolari also asserted a breach of good faith and fair dealing claim, stemming from alleged contracts between the hospital defendants and the State and City of New York by virtue of the hospital defendants' exemptions as charitable organizations.  The court dismissed that claim because of the plaintiffs' inability to demonstrate the existence of a contract between the hospitals and the government entities.  Similarly, the court dismissed Kolari's (and the other plaintiffs') claims against the hospitals asserting i) violation of the New York General Business Law § 349, ii) unjust enrichment, and iii) constructive fraud.  The court dismissed all of Kolari's federal and state-law claims with prejudice.  The entire opinion reflected the court's opening observation:

>"Plaintiffs have come to the judicial branch for relief that may only be granted by the legislative branch.  This action is one of dozens of similar bootless actions

---

unspecified and undocumented charges for medical care that are pre-set by the hospital in its sole discretion.  Apparently, Kolari was not required to sign such a form until his follow-up visits to the Hospital, and other plaintiffs were not required to sign such forms at any time.  The district court, in the portion of its opinion dealing with the contract claim, appeared to act on the assumption that Kolari and the other plaintiffs had been required to sign such forms.

> filed in twenty-three district courts across the United States on behalf of uninsured and indigent patients, wherein Plaintiffs argue, without basis in law, that private non-profit hospitals are required to provide free or reduced-rate services to uninsured persons. More specifically, Plaintiffs claim that the rates charged by the defendant hospital to uninsured patients are unreasonable merely because various insurers have negotiated with the hospital to pay lower rates – an economically efficient outcome for both sides that is fully sanctioned by New York law."

Kolari, 382 F.Supp.2d at 566.

The plaintiffs in Kolari appealed that portion of the district court's order that dismissed with prejudice three of plaintiffs' state-law claims, namely, the claims asserting breach of contract, breach of duty of good faith and fair dealing, and violation of the New York General Business Law § 349. Plaintiffs did not appeal the dismissal of their federal law claims or any other state-law claims. The Court of Appeals did not reach the merits of the three state-law claims that were the subject of the appeal, holding that the district court, having dismissed the federal claims that provided its jurisdiction, should not have exercised jurisdiction over the state claims and should have dismissed them without prejudice so that they could be asserted in state court. On remand, the district court was to "disturb its order [of dismissal] only with respect to the three appealed claims." Kolari v. New York-Presbyterian Hosp., ___ F.3d ___, 2006 WL 1901019 at *5 (2nd Cir. July 11, 2006). The district court's opinion, insofar as it relates to the merits of the three state-law claims, was not addressed by the Court of Appeals. It thus remains instructive with respect to the contract claim in the instant case, and supports this court's conclusion that the contract claim should be dismissed.

### Count 2: Breach of Duty of Good Faith and Fair Dealing

"A plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any

12

legitimate purpose." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 226 (2005) (citation omitted).  Furthermore, "[a] defendant may be liable for a breach of the covenant of good faith and fair dealing even if it does not violat[e] an express term of a contract." Id. (alteration in original, internal quotation marks and citation omitted).  Defendants seek to dismiss Count 2 on the grounds that the duty of good faith and fair dealing cannot "alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." Fleming Co., Inc. v. Thriftway Medford Lakes, Inc., 913 F. Supp. 837, 846 (D.N.J. 1995).  Because the contract, as discussed above, did contain a definite price term, Count 2 will be dismissed.

### Count 3: Violation of the New Jersey Consumer Fraud Act

The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., prohibits:

> [t]he act, use, or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived, or damaged thereby . . . .

N.J.S.A. 56:8-2.

The term "merchandise" generally includes services.  N.J.S.A. 56-8-1(c).  However, the New Jersey courts have consistently held that professionals are not covered by the Consumer Fraud Act.  "[A]lthough the literal language may be construed to include professional services, it would be ludicrous to construe the legislation with that broad a sweep in view of the fact that the nature of the services does not fall into the category of consumerism." Neveroski v. Blair, 141 N.J. Super. 365, 379 (App. Div. 1976).  While the holding of Neveroski, that real estate brokers are not covered by the Consumer Fraud Act, is no longer good law due to the subsequent

amendment of the Act to include sales of real estate, the New Jersey Supreme Court recently cited this dictum approvingly.  Macedo v. Dello Russo, 178 N.J. 340, 344 (2004).  The court in Macedo went on to say, "Thus, forty years after the [Consumer Fraud Act] was enacted, our jurisprudence continues to identify learned professionals as beyond the reach of the Act so long as they are operating in their professional capacities."  Id. at 345.

Plaintiff attempts to distinguish Defendants' activities as not related to the provision of treatment, and thus not in any professional capacity, on the basis of Blatterfein v. Larken Associates, 323 N.J. Super. 167 (App. Div. 1999), which held that an architect who misrepresented building materials to a house purchaser was acting as a sales agent rather than as a professional architect, and could therefore be liable under the Consumer Fraud Act.  Id. at 183. Macedo, however, held that a doctor's advertising was "in his professional capacity," Macedo, 178 N.J. at 346, and overcharging for professional services has been held to be outside the scope of the Consumer Fraud Act in the attorney context.  Vort v. Hollander, 257 N.J. Super. 56, 62 (App. Div. 1992).  Plaintiff's citations to Lemelledo v. Beneficial Management Corp. of America, 289 N.J. Super. 489 (App. Div. 1996), aff'd, 150 N.J. 255 (1997), do not relate to this case, since the question in Lemelledo was whether application of the Consumer Fraud Act was pre-empted by regulations of the Department of Banking and Insurance, not whether the Act applied to professionals.  See Macedo, 178 N.J. at 345. In light of these cases, the contention that Defendants' billing practices are covered by the Consumer Fraud Act is unsupportable, and this Count will be dismissed.

### Count 4: Unjust Enrichment

In order to state a claim for unjust enrichment, a plaintiff must allege "both that defendant received a benefit and that retention of that benefit . . . would be unjust."  Cameco, Inc. v.

Gedicke, 299 N.J. Super. 203, 218 (App. Div. 1997).  While Plaintiff correctly observes that "a benefit conferred need not mirror the actual loss of the plaintiff," In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (citation omitted), in this case Plaintiff does not purport to have given anything at all to Defendants.  In the absence of a benefit conferred, there can be no claim for unjust enrichment, and Count 4 will be dismissed.

### Count 6: Breach of Fiduciary Duty

New Jersey has recognized that doctors owe a fiduciary duty to patients in making medical decisons, Perna v. Pirozzi, 92 N.J. 444,464 (1983), and that nonprofit hospitals owe a fiduciary duty to the public with regard to staffing decisions.  See, e.g. Greisman v. Newcomb Hosp., 40 N.J. 389, 402.  Doe v. Bridgeton Hosp., 71 N.J. 478 (1976), also recognized that hospitals have to make their facilities available for abortions.  Id. at 490.  Both of these holdings are concerned with the capacity of hospitals to provide medical services.  See also Grodjesk v. Jersey City Med. Ctr., 135 N.J. Super. 393, 414 (speaking of a hospital's "duty to provide proper and adequate facilities for patient care.").  No case cited by either party has ever extended a hospital's fiduciary duty to its billing practices.  Plaintiffs concede that the issue is "a case of first impression in New Jersey," Pl.'s Sur-Reply Br. at 15, but argue that the "policy that may be distilled" from the cited cases ought to impose a fiduciary duty here.  Pl.'s Opp. Br. at 28.  Defendants' reference to New Jersey Economic Development Authority v. Pavonia Restaurant, 319 N.J. Super. 435, (App. Div. 1998), for the proposition that debtors and creditors do not exist in a fiduciary relationship, is not squarely on point, given that there was no adversarial bargaining or equal availability of information in this case.  Compare Id. at 446.  It is clear however, that in general New Jersey does not find fiduciary duty in the debtor-creditor context, and, given that the cases cited by both sides relate only to the provision of care and not the payment therefor, it is

unlikely that the New Jersey courts would expand a hospital's fiduciary duty to its billing practices. In the absence of a fiduciary duty, no cause of action exists for its alleged breach, and Count 6 will therefore be dismissed.

## Count 5: Declaratory and Injunctive Relief

Because Plaintiff has failed to make any claims that would entitle him to relief, the requests for declaratory and injunctive relief will be denied.

## IV.  CONCLUSION

For the reasons discussed above, Defendants' motion for judgment on the pleadings will be granted. The court will enter an order implementing this opinion.

                                              /s/ **Dickinson R. Debevoise**
                                      DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:        July 19, 2006